Martha **KEENEY,** Plaintiff,

v.

**INFINITY INSURANCE COMPANY,**
**et al., Defendants.**

No. CIV.A. 2:01–0800.

United States District Court,
S.D. West Virginia,
Charleston Division.

Oct. 25, 2002.

Rodney T. Berry, Berry, Kessler, Crutchfield & Taylor, Moundsville, WV, for Plaintiff.

David M. Kersey, Brewster, Morhous & Cameron, Bluefield, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) Defendants' renewed motion for summary judgment; and (2) Plaintiff's motion for the Court to reconsider its Memorandum Opinion and Rescheduling Order of June 24, 2002 and its Clarification Order of August 20, 2002. The Court **HOLDS IN ABEYANCE** the renewed motion for summary judgment and **DENIES** the motion to reconsider.

## I. FACTUAL BACKGROUND

On April 20, 1999 former Plaintiff Thomas O. Keeney's car was struck by a vehicle operated by Joseph Hancock. Thomas' wife, Plaintiff Martha Keeney, was not present when the accident occurred. Hancock was insured by Defendant Infinity Insurance Company. Defendant Amy Brueck adjusted Plaintiffs' claims on behalf of Infinity.

On May 11, 2001 Plaintiffs instituted this action in the Circuit Court of Kanawha County. The two-count complaint alleged (1) Hancock's negligence and damages to Thomas, along with a derivative claim for loss of consortium by Martha; and (2) a claim by both Plaintiffs against Infinity and Brueck under the West Virginia Unfair Trade Practices Act, *West Virginia Code* Section 33–11–4 (the Act).

On August 22, 2001 Plaintiffs voluntarily dismissed their claims against Hancock after a settlement was reached. On August 30, 2002 Defendants removed. Thomas died in October 2002 from causes unrelated to the accident with Hancock.[1] Defendants previously moved for summary judgment on Count Two, asserting (1) Thomas' claim under the Act did not survive his death, and (2) Martha's purely derivative claim for loss of consortium resulting from the violation of the Act likewise must be dismissed. The Court agreed necessarily with the first proposition and disagreed with the latter in its Memorandum Opinion and Rescheduling Order. After a request for clarification from Defendants concerning the dismissal of Thomas, the Court entered the Clarification Order noting the authority upon which it relied.

Defendants have now moved again to dismiss Martha's claim, asserting they breached no duty to her under the Act because they were never presented with a claim by her either to handle or adjust. Despite a Briefing Order specifically directing a response, Plaintiff has failed to address that ground for dismissal. Instead, Plaintiff moved the Court to reconsider the dismissal of Thomas' claim. The latter motion is ripe for disposition and is addressed *infra*. Lacking a reasoned response to the renewed motion for summary judgment with respect to Martha's claim, however, the Court HOLDS the motion IN ABEYANCE pending receipt of a response memoranda from Plaintiff no later than the date of the pretrial conference.[2]

---

1. Although it does not appear Thomas' death was ever formally suggested on the record, the parties have briefed the issue without dispute and the Court has accepted the fact as undisputed. The Court deems this as an informal suggestion of death upon the record.

2. The primary reason the Court has withheld ruling on the renewed motion for summary judgment stems from Plaintiff's earlier response to Defendants' original motion for summary judgment. Plaintiff asserted in that brief:

> [T]hat her present claim is not a derivative loss of consortium claim[ ] arising from her husband's Unfair Claims Practice Act [sic] claim, but is an independent claim for violations of the Unfair Claims Practice Act by the defendants *in the adjusting and handling of her loss of consortium claim which arose from her husband's bodily injury claim.*

## II. DISCUSSION

The question at the heart of this dispute was whether Thomas' claim under the Act survived his death. The Court concluded the claim did not survive, based on the Supreme Court of Appeals' decision in *Wilt v. State Automobile Mutual Insurance Co.*, 203 W.Va. 165, 506 S.E.2d 608 (1998).

In *Wilt*, the victims of an automobile accident sued an insurer under the Act. The Supreme Court of Appeals held a claim under the Act was governed by a one-year limitations period. Although that holding is of little moment here, the analysis underlying the same is dispositive for the Court in discharging its prognosticative responsibilities under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See, e.g., Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994)("Where there is no case law from the forum state which is directly on point, the district court attempts to do as the state court would do if confronted with the same fact pattern.").

In light of *Wilt*, then, the Court is called upon once again to determine whether Thomas' claim survived his death. A subsidiary question in *Wilt* was which portion of the limitations periods contained in *West Virginia Code* Section 55–2–12 controlled an Unfair Trade Practices Act claim. That limitations provision states:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the

right to bring the same shall have accrued *if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.*

W. Va.Code § 55–2–12 (emphasis added). Also relevant is *West Virginia Code* Section 55–7–8a, which the Supreme Court of Appeals has read *in pari materia* with Section 55–2–12. *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W.Va. 588, 592–93, 244 S.E.2d 321, 324 (1978)("Under customary rules of statutory construction, the 1959 changes to W. Va.Code, 55–2–12, must be read *in pari materia* with W. Va.Code, 55–7–8a, since both relate to the same subject matter and were adopted as a part of a common plan."). Section 55–7–8a lists which actions survive the death of the plaintiff:

(a) *In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive;* and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

W. Va.Code § 55–7–8a (emphasis added).

Relying upon these statutes, the Supreme Court of Appeals in *Wilt* observed:

Given its recent statutory genesis, an unfair settlement practices claim clearly did not survive at common law and thus falls squarely into subdivision (c) [of Section 55–2–12] ....

*Wilt*, 203 W.Va. at 170, 506 S.E.2d at 613.

Reading these statutory and case law excerpts together, two things become clear. First, there is no statutory basis to

(Resp. Br. at 1.) If this representation is accurate, a factual issue may be extant as to whether Martha presented a claim for handling and adjustment. That issue, and any

other extant factual or legal issues, must be addressed in Plaintiff's response to the renewed motion for summary judgment.

conclude a claim under the Act survives the death of the plaintiff harmed by the insurer. Second, since the statutory claim did not exist at common law, there is no common-law basis for survivability either.

Plaintiff protests the unfavorable language from *Wilt* is merely dicta. Assuming the truth of that proposition, as long as the dicta is well-considered and reasoned, as it is here, it is a perfectly appropriate basis upon which to predict the outcome of an open question of state law. *See Wells v. Liddy,* 186 F.3d 505, 528 (4th Cir. 1999)("To forecast a decision of the state's highest court we can consider, *inter alia* ... well considered dicta ....").

Plaintiff also attempts to avoid this result by relying upon two decisions from this District, *Roberts v. Rowe,* 89 F.R.D. 398 (S.D.W.Va.1981) and *Jones v. George,* 533 F.Supp. 1293 (S.D.W.Va.1982). There are a variety of reasons why neither *Rowe* nor *Jones* are relevant here. For example, both cases pre-date *Wilt* by nearly two decades. Also, neither case deals with the Act.

Finally, the Court has also considered, independently, the proposition that once suit is filed, the death of one party does not abate his or her claim but merely permits the substitution of a personal representative to pursue the deceased's claim. The issue, of course, deals with abatement and revival, a subject that has proved most troublesome for the Supreme Court of Appeals and the Legislature throughout the State's history.

Although neither mentioned nor briefed by the parties, *West Virginia Code* Section 56–2–8 would appear, at first blush, to abrogate the common-law rule that tort claims expire with the injured party who sought to pursue them:

**§ 56–8–2. Death of joint party; revival of pending suit or action**

Where such fact occurs in any stage of a cause, whether it be in a court of original or appellate jurisdiction, if it occur as to any of several plaintiffs or ·defendants, the suit or action may proceed for or against the others, if the cause of suit or action survive to or against them. *If a plaintiff or defendant die pending any suit or action, whether the cause of action would survive at common law or not, the same may be revived and prosecuted to judgment or decree and execution in the same manner as if it were for a cause of action arising out of contract.*

W. Va.Code § 56–8–2. Justice Brannon perhaps had it right over a century ago when he interpreted the underscored portion above as follows:

The second clause of section 2 *repeals the common-law rule* that actions for tort die with the person, and gives a right of revival to or against a sole plaintiff or defendant of actions for tort, just as in contracts.

*Henning v. Farnsworth,* 41 W.Va. 548, 23 S.E. 663 (1895)(emphasis added). As noted by Justice Miller over eight decades later, however, Judge Brannon's progressive observation never took root in West Virginia's complex *corpus juris* of abatement and revival:

A critical point sometimes overlooked is that at common law, all suits abated on the death of one of the parties, whether the underlying cause of action survived or not. Judge Brannon recognized this to some extent in *Henning v. Farnsworth,* 41 W.Va. 548, 23 S.E. 663 (1895), discussing what is now W. Va.Code, 56–8–2. He concluded that this was a revival statute which did two things. It permitted a suit to continue by substituting representative parties when a death occurred if the underlying cause of action survived at common law. *The*

*statute also, by virtue of the last sentence, repealed the common law rule that tort actions die with the person. This latter point has never been followed by this Court.* Woodford v. McDaniels, 73 W.Va. 736, 81 S.E. 544 (1914); Summersville v. Cooper, 124 W.Va. 417, 21 S.E.2d 669 (1942); *and expressly rejected in City of Wheeling v. American Casualty Co.,* 131 W.Va. 584, 591, 48 S.E.2d 404, 409 (1948). The result is that this Court has treated W.Va.Code, 56–8–1 and 2, as purely procedural statutes giving the right to revive an action *if the underlying cause of action survived in its common law framework.* With the adoption of W.Va.Code, 55–7–8a, those personal actions enumerated are deemed to survive by force of the statute.

Snodgrass v. Sisson's Mobile Home Sales, Inc., 161 W.Va. 588, 244 S.E.2d 321 (1978)(emphasis added).[3]

The upshot of this discussion is that the same result reached by the Court *supra*

still holds fast: Thomas' death, and the suggestion of it upon the record, abated this action as to him because a claim under the Act did not survive at common law and is not listed as an action that survives under Section 55–7–8a. His claim expired when he died.

The Court has reached this determination without the benefit of the parties' briefing. If Plaintiff can identify any common law or statutory support for an alternative approach, the Court will review it and, if necessary, consider reinstating Thomas' claim and substituting his personal representative in accordance with *Rule 25, Federal Rules of Civil Procedure.*[4]

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record via facsimile and to post a copy on the Court's website at www.wvsd.uscourts.gov.

---

**3.** With respect to one portion of *Snodgrass,* Plaintiff seriously misstates the development of the law thereafter. Ostensibly quoting footnote 17 in Judge Staker's *Jones* opinion, Plaintiff not once, but twice, quotes Judge Staker as follows" " '[w]hile opining on survivability in *Snodgrass* .... "a civil action to collect the penalty provided in the state usury statute" *is clearly dictum and we will treat it as such."* ' (Br. in Supp. of Mot. to Reconsid. at 3; Resp. Br. to Mot. Summ. Jgt. at 4 (emphasis added).) The actual quotation from *Jones* provides: "While ... opining on survivability in *Snodgrass,* 'a civil action to collect the penalty provided in the state usury statute' (*Id.* at 322), is clearly dictum, the *Cavendish* court *characterizes it as a holding and we will treat it as such."* Jones, 533 F.Supp. at 1301 n. 17 (emphasis added). Absent any indication of bad faith, the Court will treat the misquotation as an innocent oversight. Every effort should be undertaken, however, to accurately quote case law, especially when it originates from this District.

**4.** *Rule* 25 provides:

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.
*Id.* The ninety day deadline may bar substitution even if it would be appropriate from a substantive point of view. On the other hand, Court has treated Thomas' death as having only been *informally* suggested on the record, so the bar may not apply. The Court does not reach that question in light of its current ruling that Thomas' claim is abated.